Wanda D. JAMES,

v.

The STATE OF LOUISIANA LEGISLATIVE FISCAL OFFICE, et al.

Civ. A. No. 91–506–A.

United States District Court, M.D. Louisiana.

April 20, 1993.

Nina S. Broyles, Baton Rouge, LA, for plaintiff.

Richard Ieyoub, Atty. Gen. for the State of LA, Bernard Marcus, Sp. Asst. Atty. Gen., of Deutsch, Kerrigan & Stiles, New Orleans, LA, for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHN V. PARKER, Chief Judge.

This matter has been submitted on post trial briefs following a nonjury trial held on February 17–18, 1993. After having carefully considered the evidence and the arguments of counsel, the court now renders its findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52(a).

### Findings of Fact

1. Plaintiff, Wanda D. James, is a black female who holds a masters degree in Business Administration.

2. Defendant, John Rombach, a white male, is the Legislative Fiscal Officer in charge of the Legislative Fiscal Office (LFO) for the State of Louisiana. The State of Louisiana is also a defendant in this matter.

3. Plaintiff was hired as a legislative fiscal analyst by defendant Rombach on behalf of the LFO in October of 1988.

4. Plaintiff was assigned the responsibility for budget analysis of seventeen budget units relating to state mental health and mental retardation facilities. These analyses are prepared for presentation to the Joint Legislative Committee on Appropriations which then uses the reports in the appropriate process for the upcoming fiscal year.

5. At the beginning of her employment, plaintiff received training for her position from Robin Hunn, a senior fiscal analyst, and from her immediate supervisor, David Hood, also a senior fiscal analyst. During her employment, plaintiff continued to receive assistance from Hunn and Hood and was also counselled by Richard England, Deputy Legislative Fiscal Officer, with regard to her work.

6. The testimony of David Hood establishes that plaintiff had difficulty with basic mathematical skills such as the calculation of percentages. From a review of her work, Hood also detected that plaintiff had poor grammatical and spelling skills and an inability to grasp key budgetary concepts necessary to perform her job.

7. The testimony of Richard England establishes that plaintiff's work was deficient. Although denied by plaintiff, England specifically testified to meeting with plaintiff in January or February of 1989 after having reviewed her work and expressing his concern regarding her poor written communication skills including problems with sentence structure. England suggested that plaintiff attend courses at a local university to improve her skills.

8. After being informed of plaintiff's unsatisfactory performance by Hood, defendant Rombach reviewed plaintiff's work and pointed out certain deficiencies to her; Rombach found plaintiff's work unacceptable.

9. In February of 1989, defendant Rombach spoke to Senator Jon Johnson, a member of the black legislative caucus, regarding plaintiff's unsatisfactory performance. Plaintiff was present during a portion of the discussion and was aware of Rombach's dissatisfaction with her work.

10. Defendant Rombach consulted with Hood, Hunn, and England regarding the deficiencies in plaintiff's performance.

11. Plaintiff's employment with the LFO was terminated by defendant Rombach on March 13, 1989.

12. On the personnel evaluation form completed by defendant Rombach on March 12, 1989, the following comments were made with regard to plaintiff's termination: "1) despite an M.B.A., has great difficulty with elementary (4th grade) math and english; 2) has demonstrated no analytic skills; 3) unable to learn agency budget issues; 4) after 5 months has acquired little knowledge of basic

goals and missions of assigned agencies; 5) has required continuous professional & clerical assistance; 6) unable to develop the required, crucial budget summary." Plaintiff's Exhibit 17.

13. Some of the personal computers located in the LFO contained a software program depicting an animated female "go-go dancer." These computers were borrowed by the LFO from another section of state government and already contained the "go-go dancer" program when they were received in the LFO. Although aware that the program existed on the computers, defendant Rombach did not authorize the installation of the program. In order to view the "go-go dancer" program, it had to be voluntarily chosen from a menu.

14. Defendant Rombach made a statement in plaintiff's presence regarding the inability of blacks to pronounce the word "appropriations". Although defendant Rombach accepted plaintiff's offer to speak to a black intern regarding a body odor problem, it is not clearly established that defendant Rombach made derogatory inquiries of plaintiff regarding the body odor of black persons in general; nor is it established that he made a comment (to someone other than plaintiff) that in his opinion females over the age of twenty "turn to jelly" and are useless.

15. Following her termination, plaintiff timely filed an employment discrimination charge with the Equal Employment Opportunity Commission (EEOC). The EEOC conducted an investigation and concluded that "[t]he evidence failed to show that [plaintiff's] race or sex were factors used by the [defendant] to discharge her." After receiving the EEOC's right to sue letter, plaintiff timely filed suit in this court.

### Conclusions of Law

1. The court has subject matter jurisdiction over this matter under Title VII, 42 U.S.C. § 2000e.

2. Because this is an employment discrimination suit under Title VII, plaintiff has the initial burden of proving a prima facie case of discrimination. The burden then shifts to defendants to articulate a legitimate, nondiscriminatory reason for the termination. The burden then returns to plaintiff to establish by a preponderance of the evidence that defendants' stated reason is merely pretext for her discriminatory termination. *Wilson v. Belmont Homes,* 970 F.2d 53, 57 (5th Cir.1992).

3. Assuming that plaintiff presented a prima facie case of discrimination at trial, the court finds that defendants introduced ample evidence to establish a legitimate nondiscriminatory reason for plaintiff's termination. Plaintiff's employment was terminated because of her inability to master fundamental concepts necessary for the position for which she was hired and because of a reasonable perception that she lacked the capacity to attain the required level of proficiency within a reasonable amount of time.

4. Assuming that defendant Rombach made statements regarding the body odor of blacks and the uselessness of women over twenty, these statements, coupled with his remarks regarding the mispronunciation of "appropriations" by blacks and the existence of the "go-go dancer" computer program, are insufficient circumstantial proof to establish that plaintiff's poor work performance was merely a pretext used by defendants to terminate her because of her race and sex.

5. Plaintiff points to a historical absence of black and females from the staff of the LFO. Absent evidence that qualified blacks and females applied for vacant positions at the LFO, plaintiff's observation does not create an inference that she was terminated because of racial or sexual discrimination at the LFO.

6. In order to establish a "hostile work environment" claim under Title VII, plaintiff must establish (1) membership in a protected group; (2) subjection to unprovoked sexual advances, or request for sexual favors, or other verbal or physical conduct of a sexual nature; (3) but for her sex, the plaintiff would not have been the object of the harassment; (4) the harassment was sufficiently pervasive to alter the conditions of

employment and create an abusive or hostile working environment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Cortes v. Maxus Exploration Co.*, 977 F.2d 195 (5th Cir.1992).

 7. Plaintiff has failed to establish that she was subjected to "unprovoked sexual advances or requests for sexual favors" during her employ at the LFO. The existence of an offensive software program only viewable if voluntarily chosen from a menu does not rise to the level of sexual harassment. Further, plaintiff has failed to show that any remarks made by Rombach or any other member of the LFO staff constituted harassment which was "sufficiently pervasive to alter the conditions of her employment" and to render her working environment "abusive" or "hostile."

Accordingly, based on a finding that plaintiff has failed to carry her burden of proof with regard to racial or sexual motivation in connection with her termination from the LFO, judgment will be entered in favor of defendants, Rombach and the Legislative Fiscal Office, and against plaintiff and this action will be dismissed.